1   WO

2

3

4

5

6           **IN THE UNITED STATES DISTRICT COURT**

7           **FOR THE DISTRICT OF ARIZONA**

8

9   Julian Wyatt,                              No. CV-14-01981-TUC-JGZ (EJM)

10                 Petitioner,              **REPORT AND**
                                            **RECOMMENDATION**
11   v.

12   Charles Ryan, et al.,

13                 Respondents.

14

15

16          Petitioner Julian Wyatt filed a pro se Petition for a Writ of Habeas Corpus

17   ("PWHC") pursuant to 28 U.S.C. § 2254 on March 19, 2014.[1] (Doc. 1). Petitioner raises

18   four grounds for relief: (1) actual innocence; (2) ineffective assistance of trial counsel; (3)

19   abuse of discretion by the trial court; and (4) prosecutorial misconduct. Respondents filed

20   an Answer contending that the PWHC is untimely, and further that all of Petitioner's

21   claims are either procedurally defaulted or not cognizable on federal habeas review.

22   (Doc. 19).

23          Pursuant to Rules 72.1 and 72.2 of the Local Rules of Civil Procedure, this matter

24   was referred to Magistrate Judge Markovich for a Report and Recommendation. The

25   undersigned finds that Petitioner's PWHC is untimely, and that Petitioner has not shown

26   that he is entitled to equitable tolling. Accordingly, the Magistrate Judge recommends

27

28          [1] Although the Petition was docketed by the Clerk on March 24, 2014, the Court
     assumes that Petitioner deposited his PWHC in the prison mailing system on March 19,
     2014, as indicated by Petitioner's signature on his Petition. (Doc. 1 at 11).

that the District Court deny the Petition under 28 U.S.C. § 2254 for a Writ of Habeas Corpus.

## I.   FACTUAL AND PROCEDURAL BACKGROUND

### A. Trial, Sentencing, and Appeal

A Pima County Superior Court jury found Petitioner guilty of first degree murder. On August 4, 2008, Petitioner was sentenced to life imprisonment with the possibility of release in 25 years. (Doc. 19 Ex. B).

The Arizona Court of Appeals ("COA") summarized the facts of the case as follows:

> Early in the morning on January 3, 2006, M.'s husband, R., told M. he believed someone was trying to break into their home and went to investigate. M. heard a gunshot, and R. instructed her to "call 911 and put the children onto the floor," after which approximately twenty-one shots were fired at the home. Officers discovered bullet holes in the front windows and door of the home and found R., who ultimately died of a gunshot wound, lying on the living room floor. The weapon (an AK-47) matching the shell casings found at the murder scene was found "wrapped in a leather jacket" inside a broken-down vehicle in the backyard of the home of Wyatt's childhood friend, Adrian, and Adrian's brother, Jacob, where Wyatt frequently stayed.[2]

> Jacob testified that he, Adrian, and Wyatt had discussed plans for Jacob and Wyatt to rob a particular home to obtain drugs and money. Wyatt and Jacob drove to R.'s home. Wearing a mask and gloves and armed with Adrian's AK-47, Wyatt tried to knock down the front door of R.'s home without success. After hearing a "clicking noise" from inside the house, Wyatt shot at the front door and continued shooting as he and Jacob drove away. Wyatt was overheard the day after the incident saying that he had "heard a body drop" and that he had "unloaded a whole clip" from the AK-47. Jacob was arrested soon after the incident; Wyatt turned himself in to the police eight months later. Wyatt's former girlfriend, Rochelle, told the police that Wyatt had told her "we did something . . . really bad that night. [W]e did a jack[3] and it went bad and the guy shot at us through the door . . . [we] shot and then [we] ran. [We] think the guy died . . . ."

(Doc. 19 Ex. F at ¶¶ 2–3).

---

[2] Jacob pled guilty to manslaughter.

[3] Rochelle explained that a "jack" means to steal something.

Following his conviction, Petitioner sought review in the Arizona COA. Appointed counsel filed an *Anders* brief stating that he had searched the record and found no errors or arguable questions of law, and asked the court to review the record for reversible error. (Doc. 19 Ex. D). Petitioner filed a pro se supplemental brief on April 24, 2009 and alleged prosecutorial misconduct and abuse of discretion by the trial court. (Doc. 19 Ex. E).[4] On July 28, 2009, the COA found no reversible error and affirmed Petitioner's conviction and sentence. (Doc. 19 Ex. F).

Petitioner filed a petition for review with the Arizona Supreme Court on October 20, 2009. (Doc. 19 Ex. G). In addition to the claims Petitioner raised in his pro se brief on direct appeal, Petitioner also raised a claim of ineffective assistance of appellate counsel and stated that he did not intend to appeal pro se and thought that his brief would be a supplement to the brief he believed counsel was going to file. The Arizona Supreme Court denied review on January 26, 2010. (Doc. 19 Ex. H). Petitioner did not file a petition for review with the United States Supreme Court.

**B.  First Petition for Post-Conviction Relief**

On October 8, 2009, Petitioner initiated proceedings in Pima County Superior Court for post-conviction relief ("PCR"). (Doc. 19 Ex. J). Appointed counsel filed a Rule 32 petition on August 6, 2010, raising two claims of ineffective assistance of trial counsel and challenging the trial court's subject matter jurisdiction. (Doc. 19 Ex. M). The court then granted Petitioner's pro se motion to withdraw appointed counsel and granted Petitioner leave to file a pro se Rule 32 petition. (Doc. 19 Ex. N). Petitioner raised claims of ineffective assistance of trial counsel, ineffective assistance of appellate counsel, and lack of subject matter jurisdiction. (Doc. 19 Ex. O).

Following an evidentiary hearing, the trial court denied PCR on April 5, 2011. (Doc. 19 Exs. P, Q). Petitioner filed a petition for review with the Arizona COA on

---

[4] While the brief is date stamped as filed by the court on April 27, 2009, the Court will assume that Petitioner deposited his brief in the prison mailing system on the date indicated by his signature, April 24, 2009. In order to give Petitioner the benefit of the earliest date calculations, the Court makes this same assumption for all other documents filed by the Petitioner and included in the record for the present matter.

August 25, 2011, and on February 8, 2012 the COA issued its decision granting review and denying relief. (Doc. 19 Exs. R, S). The COA also denied Petitioner's subsequent motion for reconsideration. (Doc. 19 EX. T). The Arizona Supreme Court denied review on June 6, 2012. (Doc. 19 Ex. U). Petitioner did not file a petition for review with the United States Supreme Court. The COA issued its mandate on October 15, 2012. (Doc. 19 Ex. V).

### C. Special Action Proceedings

On September 1, 2011 Petitioner filed a petition for special action in the Arizona COA. (Doc. 19 Ex. NN). Petitioner argued that the trial court abused its discretion when it denied his request to amend his Rule 32 petition. On September 5, 2011, Petitioner filed a second petition for special action in the Arizona COA. (Doc. 19 Ex. MM). In the second petition, Petitioner raised claims of abuse of discretion by the trial court and ineffective assistance of trial counsel.

The COA declined to accept jurisdiction of the petitions, (Doc. 19 Exs. OO, PP), and the Arizona Supreme Court denied review (Doc. 19 Exs. QQ, RR).

### D. Second Petition for Post-Conviction Relief

On April 23, 2012, Petitioner simultaneously filed a second notice of PCR and a pro se Rule 32 petition in Pima County Superior Court. (Doc. 19 Exs. W, X). Petitioner's notice stated that he was alleging a claim pursuant to Ariz. R. Crim. P. 32.1 (d), (e), (f), (g) or (h), specifically that there were newly discovered material facts that would probably have changed the verdict or sentence. (Doc. 19 Ex. W). Petitioner argued that the trial court abused its discretion by not allowing Petitioner to complete his investigation before ruling on his first Rule 32 petition, and suggested that if the investigator had been appointed earlier, Petitioner could have discovered the new evidence before the evidentiary hearing and timely amended his first Rule 32 petition. (Doc. 19 Ex. X). The new evidence consisted of information discovered by the investigator that trial counsel's investigator was being investigated for fraudulent billing practices, which Petitioner alleged resulted in the failure to call a defense witness

1    (Hannah Priore) at trial.

2            On July 3, 2012, the trial court issued its order denying the second PCR petition.

3    (Doc. 19 Ex. Y). The court cited Ariz. R. Crim. P. 32.2(a)(3), which provides that a

4    defendant is precluded from obtaining PCR on any ground waived at trial, on appeal, or

5    in any previous collateral proceeding, unless the claim is expressly excepted from the

6    preclusion rule. The court further noted that IAC claims "will be deemed waived and

7    precluded not only when they previously were raised, but also when they could have been

8    raised in a prior Rule 32 proceeding." (Doc. 19 Ex. Y) (internal quotations and citation

9    omitted). The court stated that while Petitioner argued his IAC claim was not precluded

10   based on the newly discovered evidence of alleged fraudulent billing practices by trial

11   counsel's investigator, Petitioner failed to explain how this evidence was relevant to

12   counsel's failure to call Hannah as a witness. The court also stated that it was unclear

13   why Petitioner did not include the failure to call Hannah in his first PCR petition, where

14   he did allege IAC for failure to call Adrian V., Adrian A., and Iris as witnesses. The court

15   concluded that Petitioner's alleged new evidence did not meet the requirements of Ariz.

16   R. Crim. P. 32.2 that there be a "specific exception and meritorious reasons" for failing to

17   raise the IAC claim "in the previous petition or in a timely manner." The court further

18   concluded that even if the claim was not precluded, Petitioner failed to satisfy *Strickland*

19   *v. Washington*, 466 U.S. 668 (1984) to establish a claim of IAC.

20           Petitioner filed a petition for review with the Arizona COA on July 31, 2012.

21   (Doc. 19 Ex. Z). Petitioner argued that trial counsel's ineffectiveness led to the conviction

22   of one who is actually innocent, that the trial court erred in ruling that Hannah's

23   testimony would not undermine confidence in the outcome at trial, and that the trial court

24   erred in ruling that the fraudulent billing practices evidence was unrelated to Petitioner's

25   IAC claims. On November 15, 2012, the COA issued its order granting review and

26   denying relief. (Doc. 19 Ex. AA). The court stated that the trial court correctly ruled that

27   Petitioner had not established why he should be permitted to file a successive PCR

28   petition, and that in any event, the IAC claim was precluded and without merit.

Petitioner did not file a petition for review in the Arizona Supreme Court, and the COA issued its mandate on March 27, 2013. (Doc. 19 Ex. BB).

**E.  Third Petition for Post-Conviction Relief**

On April 14, 2013, Petitioner simultaneously filed a third notice of PCR and a pro se Rule 32 petition in Pima County Superior Court. (Doc. 19 Exs. CC, DD). Petitioner's notice stated that he was alleging a claim pursuant to Ariz. R. Crim. P. 32.1 (d), (e), (f), (g) or (h), specifically that there had been a significant change in the law that would probably overturn his conviction and sentence. (Doc. 19 Ex. CC). In support of his claim, Petitioner stated that the recent United States Supreme Court case of *Missouri v. Frye*, 132 S.Ct. 1399 (2012), held that defendants are entitled to effective assistance of counsel during plea negotiations. *Id.* In his petition, Petitioner raised claims of ineffective assistance of counsel based on counsel's alleged failure to spend sufficient time with him, review disclosure, and explain the state's case and Petitioner's defense. (Doc. 19 Ex. DD). Petitioner claimed that he could not make an informed decision on the plea without a proper understanding of the accusations against him.

On May 1, 2013, the trial court issued its order denying the third PCR petition. (Doc. 19 Ex. EE). The court noted that Petitioner had previously raised claims of IAC in his first two PCR petitions, and now raised a new claim of IAC based on the amount of time counsel spent meeting with Petitioner. The court found that Petitioner did not argue any newly discovered facts under Ariz. R. Crim. P. 32.2(a)(3) that would exempt the claim from preclusion and warrant a ruling on the merits. The court also noted that the exhibits attached to the petition undermined Petitioner's claim because they showed that trial counsel's investigator visited Petitioner once a week to review disclosure.

Petitioner filed a petition for review with the Arizona COA on May 29, 2013. (Doc. 19 Ex. FF). Petitioner argued that the trial court unreasonably applied Ariz. R. Crim. P. 32.2(a)(3) because Petitioner was arguing a significant change in the law, not newly discovered evidence. Petitioner also alleged that the trial court improperly relied on the investigator's visit records, which Petitioner contends are unreliable. On

November 19, 2013, the COA issued its order granting review and denying relief. (Doc. 19 Ex. GG). The court noted that while Petitioner was correct in stating that two recent Supreme Court cases had recognized the right to effective assistance of counsel in plea bargains, this has long been the law in Arizona. The COA found that the trial court did not err when it summarily denied relief because Petitioner's claims were precluded.

The Arizona Supreme Court denied review on April 17, 2014. (Doc. 19 Ex. HH). Petitioner did not file a petition for review with the United States Supreme Court, and the COA issued its mandate on May 14, 2014. (Doc. 19 Ex. II).

## F.  Fourth Petition for Post-Conviction Relief

On June 20, 2014, Petitioner filed a state habeas petition, which the trial court construed as a fourth Rule 32 petition. (Doc. 19 Ex. JJ). Petitioner alleged claims of newly discovered material facts pursuant to Ariz. R. Crim. P. 32.1(e) and actual innocence pursuant to Rule 32.1(h); specifically, abuse of discretion by the trial court, IAC, and prosecutorial misconduct.

On July 15, 2014, the trial court issued its ruling finding all claims precluded and dismissing the fourth PCR petition under Ariz. R. Crim. P. 32.6(c). (Doc. 19 Ex. KK). The court found that the petition was untimely filed more than four years after the COA issued its mandate on Petitioner's direct appeal, and noted that while claims made pursuant to Rule 32.1(e) and 32.1(h) are exempt from the timeliness and preclusion rules, "Petitioner may not avoid preclusion merely by invoking these provisions." The court found that while Petitioner alleged newly discovered evidence, he presented no new facts, and his claim under Rule 32.1(e) was a successive claim of IAC and therefore precluded. The court further found that Petitioner failed to identify any exculpatory evidence to support his claim of actual innocence under Rule 32.1(h): Petitioner's claim that the indictment was duplicitous did not fall within any of the timeliness or preclusion exceptions and could have been raised on direct appeal, and his claim that the state mischaracterized evidence was raised on direct appeal and was therefore precluded. The court dismissed the petition under Rule 32.6(c), which permits a court to dismiss a

petition for PCR after identifying all of the claims and determining "that no remaining claim presents a material issue of fact or law which would entitle the defendant to relief."

Petitioner filed a petition for review with the Arizona COA on August 25, 2014.[5] On October 22, 2014, the COA issued its order dismissing the petition. The docket entry states: "It appearing to the Court that appeal having been from judgment filed July 15, 2014, petition for review filed August 25, 2014, was not timely filed within the thirty (30) day time limit in accordance with Ariz. R. Crim. P. 32.9." The COA issued its mandate on January 13, 2015.

**G. First Federal Habeas Corpus Proceedings**

On December 9, 2013, Petitioner filed a Motion for Stay of Habeas Proceedings in case number CV 13-2177-JGZ-JR. (Doc. 19 Ex. SS). This Court denied the petition and dismissed the action without prejudice, noting that Petitioner had not filed a habeas corpus petition or paid the filing fee or filed an application to proceed in forma pauperis. (Doc. 19 Ex. TT).

**H. Habeas Petition**

Petitioner deposited his PWHC in the prison mailing system on March 19, 2014. (Doc. 1). In Ground One, Petitioner alleges actual innocence, noting that there was no physical evidence linking him to the murder and suggesting that a stronger defense at trial could have resulted in an acquittal. In Ground Two, Petitioner argues his trial counsel was ineffective for failing to conduct an adequate investigation, failing to interview and call witnesses for the defense, failing to consult with Petitioner, failing to preserve issues for appeal, and failing to review evidence the state relied on. In Ground Three, Petitioner alleges abuse of discretion by the trial court for allowing the state to introduce evidence of other crimes not listed in the indictment to convict Petitioner of felony murder, making the indictment duplicitous. In Ground Four, Petitioner alleges prosecutorial misconduct based on the state presenting misleading evidence to the jury.

---

[5] *See* Arizona Court of Appeals Division Two case information search, available at https://www.appeals2.az.gov/ODSPlus/caseInfo.cfm

1    Respondents contend that the PWHC is untimely and that Petitioner has not shown
2    that he is entitled to equitable tolling. (Doc. 19). Respondents further contend that
3    Ground One is not cognizable as a freestanding constitutional claim and that Grounds
4    Three and Four are unexhausted because they were not presented to the state courts as
5    specifically federal claims. Respondents also argue that while some of Petitioner's IAC
6    claims in Ground Two are properly exhausted, the Court should still dismiss the petition
7    based on untimeliness.

8    For the reasons stated below, the undersigned finds that the PWHC is untimely
9    and thus not properly before this Court for review. Accordingly, the undersigned
10   recommends that the District Court deny and dismiss the Petition with prejudice.

11   **II.   STATUTE OF LIMITATIONS**

12   **A. Timeliness**

13   As a threshold matter, the Court must consider whether Petitioner's PWHC is
14   barred by the statute of limitation. *See White v. Klizkie*, 281 F.3d 920, 921–22 (9th Cir.
15   2002). The writ of habeas corpus affords relief to persons in custody pursuant to the
16   judgment of a state court in violation of the Constitution, laws, or treaties of the United
17   States. 28 U.S.C. §§ 2241(c)(3), 2254(a). Petitions for habeas corpus are governed by the
18   Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). 28 U.S.C. § 2244.
19   The AEDPA mandates that a one-year statute of limitations applies to applications for a
20   writ of habeas corpus by a person in state custody. 28 U.S.C. § 2244(d)(1). Section
21   2244(d)(1) provides that the limitations period shall run from the latest of:

22   (A) the date on which the judgment became final by the
23   conclusion of direct review or the expiration of the time for seeking such review;

24   (B) the date on which the impediment to filing an application
25   created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was
26   prevented from filing by such State action;

27   (C) the date on which the constitutional right asserted was
28   initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

1

2

(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

3

28 U.S.C. § 2244(d)(1); *Shannon v. Newland*, 410 F.3d 1083 (9th Cir. 2005).

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

The other subsections being inapplicable here, Petitioner must have filed his habeas petition within one year from "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1)(A); *see also McQuiggin v. Perkins*, 133 S.Ct. 1924, 1929 (2013). The Ninth Circuit has held that when an Arizona defendant does not file a petition for review in the Arizona Supreme Court on direct review, his "direct appeal was final. . . [on] the date that he allowed his time for seeking review in the [Arizona] Supreme Court to expire." *Hemmerle v. Schriro*, 495 F.3d 1069, 1073–74 (9th Cir. 2007); *Gonzalez v. Thaler*, 132 S.Ct. 641, 656 (2012). If the petitioner does seek direct review from the state's highest court but does not file a petition for a writ of certiorari with the United States Supreme Court, the conviction becomes final when the time for filing such a petition elapses. *Bowen v. Roe*, 188 F.3d 1157, 1158–59 (9th Cir. 1999) ("the period of 'direct review' in 28 U.S.C. § 2244(d)(1)(A) includes the period within which a petitioner can file a petition for a writ of certiorari from the United States Supreme Court, whether or not the petitioner actually files such a petition."); *Jimenez v. Quarterman*, 555 U.S. 113, 120–21 (2009); *McMonagle v. Meyer*, 766 F.3d 1151, 1156 (9th Cir. 2014).

20

21

22

23

24

25

Here, Petitioner was sentenced on August 4, 2008 and timely filed a direct appeal. On July 28, 2009, the COA found no reversible error and affirmed Petitioner's conviction and sentence. (Doc. 19 Ex. F). Petitioner had 30 days from that date to seek review in the Arizona Supreme Court. *See* Ariz. R. Crim. P. 31.19(a). Petitioner filed a petition for review with the Arizona Supreme Court on October 20, 2009.[6] (Doc. 19 Ex. G). The

26

27

28

---

[6] Petitioner signed and dated his petition on September 26, 2009. The petition is date stamped as filed on October 20, 2009. While either filing date would be beyond the 30 day limit, a docket search on the Arizona Court of Appeals website indicates that Petitioner filed a motion for extension of time to file petition for review on September 14, 2009. Thus, the Court presumes that the petition for review was timely filed.

Arizona Supreme Court denied review on January 26, 2010. (Doc. 19 Ex. H). Petitioner had 90 days from that date to seek a writ of certiorari in the United States Supreme Court. *See Bowen*, 188 F.3d at 1159. Because no petition for certiorari was filed in the United States Supreme Court, Petitioner's judgment became final on April 26, 2010 within the meaning of 28 U.S.C. § 2244(d)(1)(A). Thus, absent any tolling, the one-year limitations period would have commenced on April 27, 2010 and expired on April 27, 2011. *See Bowen*, 188 F.3d at 1159 ("when a petitioner fails to seek a writ of certiorari from the United States Supreme Court, the AEDPA's one-year limitations period begins to run on the date the ninety-day period defined by Supreme Court Rule 13 expires.").

**B. Statutory Tolling**

The one-year limitation period under AEDPA is statutorily tolled during the time in "which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending." 28 U.S.C. § 2244(d)(2); *see also Lott v. Mueller*, 304 F.3d 918, 921 (9th Cir. 2002). An application for State post-conviction relief is "'properly filed' when its delivery and acceptance are in compliance with the applicable laws and rules governing filings." *Artuz v. Bennett*, 531 U.S. 4, 8 (2000). If a state court rejects a petitioner's PCR petition as untimely, it cannot be "properly filed" and the petitioner is not entitled to statutory tolling. *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005). Statutory tolling of the limitations period ends "[a]fter the State's highest court has issued its mandate or denied review, [because] no other state avenues for relief remain open." *Lawrence v. Florida*, 549 U.S. 327, 332 (2007).

In Arizona, post-conviction review is pending once a notice of post-conviction relief is filed, even though the petition is not filed until later. *Isley v. Arizona Department of Corrections*, 383 F.3d 1054, 1056 (9th Cir. 2004); *see also* Ariz. R. Crim. P. 32.4(a) ("A proceeding is commenced by timely filing a notice of post-conviction relief with the court in which the conviction occurred."). An application for state post-conviction relief remains pending "until it has achieved final resolution through the State's post-conviction

procedures." *Carey v. Saffold*, 536 U.S. 214, 220 (2002). State law determines the conclusion of collateral review and thus, state law also determines the conclusion of statutory tolling under the AEDPA. *See Hemmerle*, 495 F.3d at 1077. "[W]hen the Arizona Court of Appeals grants review of the trial court's decision on a petition for post-conviction relief but denies relief, and the petitioner does not seek further review, the post-conviction proceeding is pending until the date the appellate court issues its mandate." *Wells v. Ryan*, 2015 WL 9918159, at *9 (D. Ariz. Aug. 13, 2015), *report and recommendation adopted by* 2016 WL 319529 (D. Ariz. Jan. 27, 2016) (collecting cases and citing Ariz. R. Crim. P. 31.23 and 32.9(g)); *Ramon v. Ryan*, 2010 WL 3564819, *6 (D. Ariz. July 23, 2010) (same). However, where the petitioner does file a petition for review with the Arizona Supreme Court, "the collateral proceeding '[is] determined' . . . when the Arizona Supreme Court denie[s] [the] petition for review" and the statute of limitations begins to run again on the date that the court denies review. *Hemmerle*, 495 F.3d at 1077 (noting that after the Arizona Supreme Court denied review, "[t]here was nothing left for [the court] to do" and "nothing remained 'pending' for purposes of § 2244(d)(2).").

Here, Petitioner timely filed his first notice of PCR on October 8, 2009.[7] This PCR notice was properly filed and therefore tolled AEDPA's one-year statute of limitations. The trial court denied PCR on April 5, 2011. Petitioner filed a petition for review with the Arizona COA, and on February 8, 2012 the COA issued its decision granting review and denying relief. The Arizona Supreme Court denied review on June 6, 2012. Thus, Petitioner's properly filed PCR application remained pending until June 6, 2012, when the Arizona Supreme Court denied review.[8] *See Hemmerle*, 495 F.3d at 1077; *Lawrence*,

---

[7] Petitioner signed and dated his notice on October 8, 2009. The notice is date stamped as filed on February 4, 2010. This discrepancy is not material to the Court's decision in this matter because in either case, the notice of PCR was filed before AEDPA's one-year limitations period commenced on April 27, 2010.

[8] Respondents present an alternative argument considering whether Petitioner's PCR proceedings remained pending until the Arizona COA issued its mandate. (Doc. 19 at 9). "Under the Arizona rules, [however,] there is no requirement for a mandate to issue from a denial of review. Under such circumstances, review is final when denied. There is

- 12 -

549 U.S. at 332. Petitioner had one year from that date to file his federal habeas petition. Accordingly, absent equitable tolling, the statute of limitations expired on June 7, 2013, making Petitioner's May 19, 2014 PWHC untimely.

Unlike the 2009 notice, Petitioner's second, third, and fourth notices of PCR were not "properly filed" and did not statutorily toll the one-year limitations period. "[A]n application is 'properly filed' when its delivery and acceptance are in compliance with the applicable laws and rules governing filings," including "the time limits upon its delivery . . ." *Artuz*, 531 U.S. at 8. If a petitioner files an application after the generally applicable state time limit, the application may nonetheless be considered "properly filed" if it fits within any exception to that limit. *Pace*, 544 U.S. at 413. However, the existence of exceptions to the state's timely filing requirements does not prevent a late application from being deemed improperly filed when the application does not fit within any exceptions to the time limit. *Id.* at 408. "When a post-conviction petition is untimely under state law, that is the end of the matter for purposes of § 2244(d)(2)." *Id.* at 414 (internal brackets and quotation marks omitted).

In Arizona, notices for PCR (other than in "of-right" or capital proceedings) "must be filed within ninety days after the entry of judgment and sentence or within thirty days after the issuance of the order and mandate in the direct appeal, whichever is the later." Ariz. R. Crim. P. 32.4(a). In the event that a notice is not timely filed, Rule 32.2(b) of the Arizona Rules of Criminal Procedure sets forth conditions for filing, which if met, exclude the claims contained in the untimely notice from preclusion. *See Pace*, 544 U.S. at 413–14 (comparing conditions of filing with conditions of relief). This rule may permit an untimely or successive petition if a petitioner can establish that (1) he "is being held in custody after the sentence imposed has expired," (2) "[n]ewly discovered material facts

_____

nothing more for the reviewing court to do." *Ramon v. Ryan*, 2010 WL 3564819, *7 (Dist. Ariz. July 23, 2010). Further, pursuant to *Lawrence*, "an application for state postconviction review no longer exists" upon the state supreme court's denial of review. 549 U.S. at 332. Thus, the undersigned finds that Petitioner's PCR proceedings concluded for purposes of 28 U.S.C. § 2244(d)(2) when the Arizona Supreme Court denied review, and did not continue to remain pending until the Arizona COA issued its mandate.

- 13 -

probably exist and such facts probably would have changed the verdict or sentence," (3) his "failure to file a notice of post-conviction relief of-right or notice of appeal within the prescribed time was without fault on the defendant's part," (4) "[t]here has been a significant change in the law that if determined to apply to defendant's case would probably overturn the defendant's conviction or sentence," or (5) "[t]he defendant demonstrates by clear and convincing evidence that the facts underlying the claim would be sufficient to establish that no reasonable fact-finder would have found defendant guilty of the underlying offense beyond a reasonable doubt." Ariz. R. Crim. P. 32.1(d–h). "[T]he notice of post-conviction relief must set forth the substance of the specific exception and the reasons for not raising the claim in the previous petition or in a timely manner." Ariz. R. Crim. P. 32.2(b).

In the instant case, Petitioner's second notice of PCR was untimely filed. Petitioner filed his second notice on April 23, 2012—more than two years after the direct appeal mandate issued on February 11, 2010—well beyond the 30-day limitation period. Furthermore, the record does not reflect that Petitioner complied with Rule 32.2(b) when he submitted his untimely notice. While Petitioner alleged newly discovered material facts—that trial counsel's investigator was being investigated for fraudulent billing practices—Petitioner failed to explain how not having this information previously prevented him from alleging the IAC claim based on counsel's failure to call Hannah as a defense witness in his first PCR petition. Therefore, under state law, the second notice for post-conviction relief was untimely and was not "properly filed" for purposes of 28 U.S.C. § 2244(d)(2), and the time period during which Petitioner pursued his untimely second PCR petition through the state courts it not subject to statutory tolling. *Banjo v. Ayers*, 614 F.3d 964, 968 (9th Cir. 2010) ("An untimely petition . . . is not 'properly filed' pursuant to 28 U.S.C. § 2254(d)(2), and so it does not toll the statute of limitations.").[9]

---

[9] "Only the time period during which a round of habeas review is pending tolls the statute of limitation; periods between different rounds of collateral attack are not tolled." *Banjo*, 614 F.3d at 968. The Ninth Circuit "employ[s] a two-part test to determine whether the period between the denial of one petition and the filing of a second petition should be tolled. First, we ask whether the petitioner's subsequent petitions are limited to

This conclusion is further supported by the trial court's ruling denying the second PCR petition. (Doc. 19 Ex. Y). In addressing preclusion, the court found that "Petitioner's alleged fraudulent billing practices does not meet the requirement that there be a 'specific exception and meritorious reasons,' for failure to raise ineffective assistance of counsel with respect to Ms. Priore, 'substantiating the claim and indicating why the claim was not stated in the previous petition or in a timely manner.'" (Doc. 19 Ex. Y at 3) (quoting Ariz. R. Crim. P. 32.2). In so ruling, the court necessarily found that the second PCR petition was untimely because Petitioner's claim did not satisfy any exception to the time limit for filing. *See* Ariz. R. Crim. P. 32.2(b) ("If the specific exception and meritorious reasons do not appear substantiating the claim and indicating why the claim was not stated in the previous petition or in a timely manner, the notice shall be summarily dismissed."). Accordingly, because the second notice was filed after the time limit, and did not fit within any exceptions to that limit, it was not "properly filed" and does not toll the limitations period under § 2244(d)(2). *See Pace*, 544 U.S. at 414 ("When a post-conviction petition is untimely under state law, that is the end of the matter for purposes of § 2244(d)(2)."); *Trigueros v. Adams*, 658 F.3d 983, 988 (9th Cir. 2011) ("An untimely state petition is not 'properly filed' and does not trigger statutory

---

an elaboration of the facts relating to the claims in the first petition. If the petitions are not related, then the subsequent petition constitutes a new round of collateral attack, and the time between them is not tolled. If the successive petition was attempting to correct deficiencies of a prior petition, however, then the prisoner is still making proper use of state court procedures, and habeas review is still pending. Second, if the successive petition was not timely filed, the period between the petitions is not tolled." *Id.* at 968–69 (internal quotations and citations omitted) (noting that because the court concluded the petition was untimely under the second prong of *King*, the court "need not determine whether the petition was a continuation of the first or the start of a second round."); *see also Hemmerle*, 495 F.3d at 1075 (explaining that when the court construes the new petition as part of the first round of collateral review, tolling applies if the petition was denied on the merits but not if the petition was deemed untimely). If a new claim is asserted in the second petition, then the second petition is considered a "new round," even if the second petition corrects deficiencies in the first petition. *Stancle v. Clay*, 692 F.3d 948, 955–56 (9th Cir. 2012) (finding that because the petitioner "did not limit his second petition to an elaboration of the facts and his second petition started a 'new round,' he is not entitled to statutory gap tolling for the [] days between his first and second superior court petitions."). Here, because the undersigned finds that Petitioner's second, third, and fourth notices of PCR were untimely, Petitioner is not entitled to tolling for the periods between the petitions.

- 15 -

1   tolling under AEDPA.").[10]

2       Furthermore, while a petitioner is entitled to statutory tolling during the entire time

3   he is seeking "one full round" of collateral review in state court, *Carey*, 536 U.S. at 222,

4   successive post-conviction relief petitions do not toll the limitations period. *See* 28 U.S.C.

5   § 2244(d)(2) (tolling limitations period during the time "which a properly filed

6   application for State post-conviction or other collateral review . . . is pending."); Ariz. R.

7   Crim. P. 32.1(d)–(h), 32.4(a) (successive petition for post-conviction relief is limited to

8   certain claims); *Artuz v. Bennett*, 531 U.S. 4, 7 (2000); *see also Waldrip v. Hall*, 548 F.3d

9   729, 734 (9th Cir. 2008); *Carey v. Saffold*, 536 U.S. 214, 220 (2002). Where, as here,

10  each of the subsequent petitions were untimely and not exempt from the preclusion rules,

11  the petitions were not properly filed, and Petitioner is not entitled to statutory tolling for

12  the time that his second, third, and fourth PCR proceedings were pending. In denying

13  Petitioner's second PCR petition, the trial court found that Petitioner's alleged new

14  evidence did not meet the requirements of Ariz. R. Crim. P. 32.2 to explain why

15  Petitioner had not timely raised the IAC claim in his first petition. On review, the Arizona

16  COA found that the trial court correctly ruled that Petitioner had failed to demonstrate

17  why he should be permitted to file a successive PCR petition, and that in any event, the

18  IAC claim was precluded and without merit. In denying Petitioner's third PCR petition,

19  the trial court found that Petitioner did not argue any newly discovered facts under Ariz.

20  R. Crim. P. 32.2(a)(3) that would exempt the claim from preclusion and warrant a ruling

21  on the merits. On review, the COA found that the trial court did not err when it

22  summarily denied relief because Petitioner's IAC claim was precluded. Finally, in

23  dismissing Petitioner's fourth PCR petition under Ariz. R. Crim. P. 32.6(c), the trial court

24  found that all of Petitioner's claims were precluded, and that the petition was untimely

25  filed more than four years after the COA issued its mandate on Petitioner's direct appeal.

26

27      [10] The fact that the trial court also found that even if the claim was not precluded,
    Petitioner failed to satisfy *Strickland v. Washington*, is irrelevant. *See Carey*, 536 U.S. at
28  225–26 (holding that state court alternative rulings did not make petition timely and thus
    "properly filed.").

- 16 -

The court further noted that noted that while claims made pursuant to Ariz. R. Crim. P. 32.1(e) and 32.1(h) are exempt from the timeliness and preclusion rules, a defendant cannot "avoid preclusion merely by invoking these provisions." (Doc. 19 Ex. KK).

In sum, the undersigned finds that Petitioner was only entitled to statutory tolling of ADEPA's one-year statute of limitations until he completed one full round of collateral review in the state courts. That first round of collateral review concluded on June 6, 2012, and Petitioner had one year from that date to file his federal habeas petition. Petitioner's successive and untimely PCR petitions did not toll, pause, or re-start the statute of limitations. Accordingly, absent equitable tolling, the statute of limitations expired on June 7, 2013, making Petitioner's May 19, 2014 PWHC untimely.

**C. Equitable Tolling**

In certain limited circumstances, AEDPA's one-year filing deadline may be equitably tolled. *Holland v. Florida*, 130 S.Ct. 2549, 2560 (2010). A petitioner is entitled to equitable tolling if he can demonstrate "'(1) that he has been pursuing his rights diligently and (2) that some extraordinary circumstances stood in his way'" to prevent him from timely filing a petition. *Holland v. Florida*, 130 S.Ct. at 2562 (quoting *Pace*, 544 U.S. at 418). An extraordinary circumstance is one that is "beyond a prisoner's control [that] make[s] it impossible to file a petition on time." *Miles v. Prunty*, 187 F.3d 1104, 1107 (9th Cir. 1999) (citations omitted). And, to justify equitable tolling, the extra ordinary circumstance must be attributable to "external forces [] rather than a petitioner's lack of diligence[.]" *Id.*   Further, a petitioner must establish a "causal connection" between the extraordinary circumstance and his failure to file a timely petition. *See Bryant v. Arizona Attorney General*, 499 F.3d 1056, 1060 (9th Cir. 2007). "'[T]he threshold necessary to trigger equitable tolling [under AEDPA] is very high, lest the exceptions swallow the rule.'" *Spitsyn v. Moore*, 345 F.3d 796, 799 (9th Cir. 2003) (quoting *Miranda v. Castro*, 292 F.3d 1063, 1066 (9th Cir. 2002)).

Here, Petitioner has failed to meet his burden. Petitioner contends that he is entitled to equitable tolling because he has been pursuing his rights diligently but that the

trial court's denial of his motion to amend his first PCR petition stood in his way and prevented him from properly and timely filing his claims. (Doc. 20). Petitioner states that he had to file multiple state petitions in order to fairly present and properly exhaust his claims, and therefore argues that the statute of limitations for his habeas petition should be equitably tolled. However, while the Court recognizes that Petitioner has been filing multiple petitions for relief in the state courts since his conviction, Petitioner does not demonstrate any extraordinary circumstances that prevented him from timely filing his federal habeas petition. Petitioner was entitled to one full round of collateral review in the state courts, and once that review concluded on June 6, 2012 when the Arizona Supreme Court denied review of his first Rule 32 petition, Petitioner had one year to file his federal habeas petition. The statute of limitations expired on June 7, 2013, but Petitioner did not file his PWHC until May 19, 2014, nearly two years after his collateral review proceedings concluded. As the Court explained above, Petitioner's second, third, and fourth notices of PCR did not toll the statute of limitations, and these successive PCR petitions do not constitute "extraordinary circumstances" that prevented Petitioner from timely filing his federal habeas petition. *See Biggs v. Duncan*, 339 F.3d 1045, 1048 n. 2 (9th Cir. 2003) ("A petitioner must be careful to timely file in federal court after he concludes his first full round of state collateral review, lest he run afoul of the statute of limitations. To avoid that circumstance, a petitioner like Biggs could have timely filed a federal petition for habeas corpus after his first round was completed, then requested the district court to exercise its discretion to stay the petition until he fully exhausted his Round Two claims.") (citing *James v. Pliler*, 269 F.3d 1124, 1126-27 (9th Cir. 2001)).

And, in any event, Petitioner's pro se status, indigence, limited legal resources, ignorance of the law, or lack of representation during the applicable filing period do not constitute extraordinary circumstances justifying equitable tolling. *See, e.g., Rasberry v. Garcia*, 448 F.3d 1150, 1154 (9th Cir. 2006); *see also Ford v. Pliler*, 590 F.3d 782, 789 (9th Cir. 2009) ("A petitioner's misunderstanding of accurate information cannot merit relief, as equitable tolling requires a petitioner to show that some extraordinary

circumstance[ ] beyond [his] control caused his late petition, and this standard has never been satisfied by a petitioner's confusion or ignorance of the law alone.") (internal quotations and citation omitted) (citing *Waldron-Ramsey v. Pacholke*, 556 F.3d 1008, 1011 (9th Cir. 2009) ("To apply the doctrine in extraordinary circumstances necessarily suggests the doctrine's rarity, and the requirement that extraordinary circumstances stood in his way suggests that an external force must cause the untimeliness, rather than . . . merely oversight, miscalculation or negligence on the petitioner's part . . . .") (internal quotation marks and brackets omitted)).

Accordingly, the undersigned finds that Petitioner is not entitled to equitable tolling and the PWHC is untimely.

## III.   CONCLUSION

In sum, AEDPA's statute of limitations began to run when Petitioner's first round of collateral review ended on June 6, 2012, and ran uninterrupted until June 7, 2013. Petitioner did not file his federal habeas petition until March 19, 2014, approximately nine months after the limitations period expired. Therefore, based on the above analysis, the undersigned finds that Petitioner's PWHC is barred by the statute of limitations.

## IV.   RECOMMENDATION

Based on the foregoing,

**IT IS HEREBY RECOMMENDED** that the Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 be DENIED.

**IT IS FURTHER RECOMMENDED** that a certificate of appealability and leave to proceed in forma pauperis on appeal be DENIED because dismissal of the Petition is justified by a plain procedural bar and reasonable jurists would not find the procedural ruling debatable.

Pursuant to 28 U.S.C. § 636(b) and Rule 72(b)(2) of the Federal Rules of Civil Procedure, any party may serve and file written objections within fourteen (14) days after being served with a copy of this Report and Recommendation. A party may respond to another party's objections within fourteen (14) days after being served with a copy. Fed.

R. Civ. P. 72(b)(2). No replies shall be filed unless leave is granted from the District Court. If objections are filed, the parties should use the following case number: **CV-14-1981-TUC-JGZ**

Failure to file timely objections to any factual or legal determination of the Magistrate Judge may result in waiver of the right of review. The Clerk of the Court shall send a copy of this Report and Recommendation to all parties.

Dated this 5th day of December, 2016.

Eric J. Markovich
United States Magistrate Judge